O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIBUEZE NWAFOR,<br><br>              Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA<br><br>              Defendant. | Case No. 2:14-CV-03690-ODW<br>         (2:11-CR-00791-ODW)<br><br>**ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, PURSUANT TO 28 USC §2255 [80]; AND MOTION TO FILE LATE DIRECT APPEAL AND HOLD 2255 IN ABEYANCE [81].** |

## I. BACKGROUND

Nwafor and a second individual filed false tax returns with the Internal Revenue Service (IRS) in order to receive tax refunds on behalf of tax filers. In furtherance of the scheme to defraud the United States, Nwafor used the names and social security numbers of the tax filers in order to file the fraudulent claims. Once the refunds were paid, Nwafor was supposed to give a portion of the refund to the named tax filer. However, in some instances, he received the

tax refund on behalf of the tax filer and failed to give over any of the funds from the refund., As a result, the IRS paid over $85,000 in fraudulent claims. He himself received a $32,789 refund based on a fraudulent claim in his own 2010 tax return.

## II. PROCEDURAL HISTORY

Nwafor was charged in three counts of a 21 count indictment with violation of Title 18 USC §287, making false / fraudulent claims; Title 18 USC § 641 theft of government property and violation of Title 18 USC §1028A aggravated identity theft. On January 29, 2013 he entered pleas of guilty to those three counts, 9, 16 and 20 pursuant to a written plea agreement. [62]

Based upon an adjusted offense level of 19 and a downward departure in criminal history to category IV, on April 29, 2013 Nwafor was given a guideline sentence at the low end of the suggested range of 46 to 57 months plus the mandatory consecutive 24 month sentence for aggravated identity theft, or 70 months total. [69]                .

Nwafor did not file a direct appeal, but on May 14, 2014 he filed the instant motion to vacate, set aside or correct his sentence and to withdraw his previously entered guilty plea, pursuant to 28 U.S.C. §2255. He also filed a request to hold in abeyance his 2255 petition so that he could file a late direct appeal. [81].

For the reasons discussed in the following pages, both motions are DENIED as untimely.

### III. FACTUAL SUMMARY

The following factual statement is taken directly from the written plea agreement, which factual statement was adopted by Nwafor.

Beginning on an unknown date, and continuing until on or about April 16, 2009, in San Bernardino County, within the Central District of California, and elsewhere, defendant knowingly presented false claims to the United States Department of the Treasury, Internal Revenue Service ("IRS") , specifically fraudulent tax returns, as part of a tax scheme to defraud the United States. In the same time period, Nwafor knowingly stole and converted to his own use money which belonged to the United States, specifically tax filer refunds nominally paid out to the tax filer, but in reality misappropriated by defendant and/or others with whom he conspired. In the process of submitting false tax returns to the IRS, defendant knowingly and intentionally used the means of identification of other individuals who he knew to be real people, specifically, he used the names and social security account numbers of the purported tax filers in order to submit false tax returns in the names of the tax filers. At the time of his conduct, defendant knew that the information contained in the false tax returns that he filed on behalf

of the tax filers contained materially false information, that is, the IRS would potentially pay out tax refunds based on defendant's false claims that the tax filers had worked for, and had taxes withheld from wages received from , a bogus corporation, including ""Prominent Components" (sic) or California Mutual Life and Health ("CMLH").

In 2009, defendant prepared tax returns for various individuals for tax year 2008, including a 2008 federal income tax return in the name of A.O., claiming a tax refund of $7,773, which was filed electronically by defendant on or about April 15, 2009. Similar to the other tax refunds filed by defendant, as set forth in counts one through eight and ten of the indictment, this federal income tax return in the name of A.O. included a Form W-2, which falsely claimed that A.O. received $30,119.00 in wages from CMLH. Defendant knew that the wages and the amount reported in tax withholdings for A.O. that he submitted on the Form W-2 were fictitious. Defendant also knew when he filed this income tax return that A.O. had not worked for, or received the stated income in wages from, CMLH. This materially false statement that defendant presented to the IRS resulted in the IRS paying a tax refund of $7,653.15 (reflecting the $7,773 refund sought minus banking fees) purportedly for A.O. into a Washington Mutual bank account owned by E.W., an ex-girlfriend of defendant.

Defendant wrongfully stole and converted this tax refund, which exceeded $1,000 in value, into his use or the use of another knowing that it was government property. During and in relation to his appropriation of the tax refund, defendant knowingly possessed and used without lawful authority a means of identification belonging to a real person, that is, the name and social security account number of A.O.

Law enforcement determined that the Internet Protocol ("IP") address for the 2008 electronic tax filing for A.O. traced back to a house belonging to M.W., who had rented a room in her house to defendant in early 2009. Additionally, law enforcement interviewed E.W., defendant's ex-girlfriend whose bank account was used to receive A.O.'s tax refund. E.W. stated that defendant worked at a car body shop, but that he told her that he prepared taxes. According to E.W., defendant asked her to use her bank accountand told her that he was expecting a large amount of money (in the range of $7,000 to $8,000), but defendant claimed that he could not have the money deposited into his account because he did not want to have his account frozen.

E.W. indicated that when the funds were electronically deposited into her bank account, defendant and defendant's friend, "Chris," drove them to the bank where E.W. withdrew the funds and paid the money to defendant.

5

## IV. CLAIMS FOR RELIEF

A. Nwafor seeks to vacate, set aside or correct his sentence on the following grounds:

1. The guilty plea was not knowingly or intelligently made;
2. Actual innocence;
3. Ineffective assistance of counsel;
4. Improper sentencing enhancements;
5. Attorney error resulting in a miscarriage of justice;
6. Ambiguous plea agreement which was breached by the government;
7. Double counting.

"someone with knowledge of the law told him" that he should not have listened to his attorney when his attorney informed him that he had waived his right to appeal his conviction and his sentence as part of his plea agreement. The waiver was confirmed by the court during the plea proceeding.

**A. There Is No Challenge to the Conviction, Only the Sentence.**

As part of his plea agreement, Nwafor expressly waived his right to bring a post-conviction attack on his conviction or sentence. Specifically, with respect to his conviction, he waived the right to appeal on all ground, with one exception: that his guilty plea was involuntary. He also gave up his right to bring "a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral

attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable sentencing guidelines, sentencing statutes or statutes of conviction. See paragraph 18 of the Plea Agreement [62]. However, his claims may be time barred.

**B. The Timing of the Request**

28 U.S.C. §2255 (f) provides: "[a] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of - (1) the date on which the judgment of conviction becomes final."

Nwafor plead guilty to counts 9, 16 and 20 on January 25, 2013. The plea was accepted and entered that same day. He had 14 days to challenge that conviction by direct appeal. He failed to do so

under sentence of a court established by Act of Congress claiming the right to be released upopn the ground thgat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the m aximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

Subparagraph (f) provides " a 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of - - (1) the date on which the conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
petition. On its face, this exceeds the one year statute of limitations and he provides no justification for a finding that the statute should be equitably tolled, nor is the court able to discern one. His motion is time barred.

Of the myriad grounds Nwafor asserts in this petition, all are completely lacking in merit or only marginally meritorious with the exception of one. Nwafor claims ineffective assistance of his first counsel Mr. Maestas for advising him that he could not file a direct appeal because he had waived that right. His claim of

attorney error stems from being advised by "someone knowledgeable in the law "that he should not have listened to his attorney." He then retained a new attorney, Mr. Navarro, who informed him that it was by then too late to file a direct appeal. It is this claim, and only this claim which entitles Nwafor to relief.

A claim of ineffective assistance of counsel is measured by the standards set forth in *Strictland v. Washington*, 466 U.S. 668. "A defendant must demonstrate both that counsel's representations 'fell below an objective level of reasonableness,' and that cognizable prejudice flowed therefrom, i.e. that he 'would not have pleaded guilty and would have insisted on going to trial.' if not for counsel's short-comings." See also *Hill v. Lockhart*, 474 U.S. 52, 57-59. Here, the misinformation of which he complains did not influence his decision to plead guilty, but came after the plea and sentencing. He cannot then argue that but for Mr. Maestas' advise he would not have plead guilty but would have insisted in going to trial. However, in this instance, prejudice need not be shown.

**1. Erroneous advice regarding his waiver of his appellate right.**

In point of fact, Nwafor may have been given misinformation by Mr. Maestas. Paragraph 19 of the plea agreement provides in part that so long as the court imposed "a total term of imprisonment on the counts of conviction of no more than 57 months' imprisonment, defendant gives up the right to appeal all of

the following: (a) the procedures and calculations used to determine and impose any portion of the sentence, (b) the term of imprisonment imposed by the court. . . ."

Nwafor is clearly contesting his sentence and the calculations used to determine that sentence. Because the total sentence was in excess of 57 months the waiver does not apply. Moreover, because he also brings his claim on the grounds of ineffective assistance of counsel, his waiver which forecloses a post-conviction collateral attack is not applicable. The court finds that Nwafor's claims of ineffective assistance of counsel has merit. He states that he desired to appeal and called his attorney to inquire whether the appeal had been filed, but his calls went unreturned. His attorney in fact did not file a timely direct appeal.

It is well settled that claims of ineffective assistance of counsel, which perhaps is the most commonly raised post-conviction allegation, and undoubtedly the most spurious, will generally find favor with the court when supported by a claim of mishandling of an appeal. For example in *Morrow v. U.S.* 772 F.2d 525 (9th Cir. 1985) Petitioner's allegation that his attorney failed to advise him of right to appeal conviction following guilty plea after being told that petitioner's guilty plea was coerced by threats was sufficient to raise ineffective assistance of counsel claim, precluding summary dismissal of petition for writ of habeas corpus.

10

It well might be the case that Mr. Maestas felt that an appeal would have no merit given the signed waiver repeated orally at the change of plea hearing. However, the issue is not whether Petitioner suffered prejudice from the failure to file a timely appeal, or to appeal at all. In *U.S. v. Hollis* 687 F.2d 257 (8th Cir 1982) the court found no showing of prejudice or likelihood of success on the merits need be made to show ineffective assistance of counsel for failure to file timely appeal. The attorney's mere failure to file timely notice of appeal of defendant's sentence and conviction was all that was necessary to demonstrate ineffective assistance of counsel. See also, *Miller v. McCarthy* 607 F.2d 854 (9th Cir. 1979) Petitioner, claiming ineffective assistance of counsel based on failure to file notice of appeal, was not required to show that he was prejudiced by loss of his right to appeal.

2. **The Court Is Without Authority to Extend Nwafor's Deadline to File His Notice of Appeal**.

Regarding appeals in criminal cases, "a defendant's notice of appeal must be filed in the district court within 14 days" of judgment being entered. FRAP Rule 4 (b). Subparagraph (4) provides "Upon a finding of excusable neglect or good cause, the district court may - before or after the time has expired, with or without motion and notice - **extend the time to file a notice of appeal for a period not to exceed 30 days** from the expiration of the time otherwise prescribed by this Rule 4(b)." (Emphasis

added.) This time limit is jurisdictional. *Miller v. Sumner*, 872 F.2d 287, 288 (9th Cir.1989).

The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed "no later than 30 days after the time prescribed by this Rule 4(a) expires". No such extension under this rule Rule 4(a)5 may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

Here, Nwafor's first counsel indicated that an appeal was foreclosed to him by virtue of a waiver provision in the plea agreement. The question is whether mistake of counsel can be considered excusable neglect which would then warrant the court considering granting an extension of time to file a notice of appeal.

The Ninth Circuit has long held in both criminal and civil cases that mistake of counsel does not constitute excusable neglect. *See Pratt v. McCarthy,* 850 F.2d 590 (9th Cir.1988), *reh'g denied,* 878 F.2d 331, 332 (9th Cir.1989). (miscommunication and mistakes of counsel are not excusable); *See also United States v. Avendano–Camacho,* 786 F.2d 1392, 1394 (9th Cir.1986) ("attorney neglect has not been seen as providing a basis for relief" from Rule 4(b)). The weight of Ninth Circuit authority firmly rejects the notion that the negligence of counsel constitutes

12

excusable neglect. Consequently, we do not even reach the issue of whether the court is empowered to grant the relief requested. However, for the sake of completeness this last element will be disposed of as well.

Even were the court able to find good cause or excusable neglect in the failure to timely file a notice of appeal, the court is without authority to extend the deadline to do so in this case. Rule 4(a)(5) provides that upon a showing of excusable neglect or good cause, the district court may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the ti me prescribed by this Rule 4(a). No such extension shall exceed 30 days past such prescribed time.

## VI. CONCLUSION

Nwafor has requested to hold his 2255 petition in abeyance until he has been given leave to file a direct appeal. Because his 2255 motion is time barred, the request to hold it in abeyance is denied as moot. As for the request for leave to file a direct appeal, which the court construes as a request for extension of time to do so. (Courts must treat any submission signed by a party (and especially by a pro se litigant) as an extension motion if it may fairly be so read. See *Campos v. LeFevre*, *825* F.2d 671, 676 (2d Cir. 1987).) The district court's authority to grant such an extension is not without its limitation. Nwafor was convicted on January 29, 2013.

That conviction became final 14 days later or February 8, 2013.  Over a year later on May 14, 2014 he filed the instant request which the court now treats as a request for extension of time to file his appeal.  This request comes far outside the 30 day time period and is therefore untimely.  On that basis, the court must DENY the motion.

IT IS SO ORDERED.

November 25, 2014

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE